IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAKLEY LIMITED, | ) |
| Plaintiff-Counterclaim Defendant, | ) ) ) ) ) |
| v. | ) Civil Action No. 12-728-GMS |
| ENSOTRAN, LLC, | ) ) ) |
| Defendant-Counterclaim Plaintiff, | ) ) ) |
| ENSOTRAN, LLC, | ) ) ) |
| Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| DONNA BAAR, ROGER BAAR, ROSEBANK ENTERPRISES, INC., and YUAN GONG YI a/k/a ELMER YUEN, | ) ) ) ) |
| Third-Party Defendants | ) ) |

## MEMORANDUM

**I.   INTRODUCTION**

On July 25, 2012, the plaintiff, Wakley, Limited ("Wakley"), filed an Amended Complaint asserting five counts against the defendant, Ensotran, LLC ("Ensotran"), including: breach of contract, conversion, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. (D.I. 6.) On September 17, 2012, Ensotran filed an Answer to Wakley's Amended Complaint, asserted Counterclaims against Wakley, and filed a Third-Party Complaint against Elmer Yuen ("Yuen"), Donna Baar ("Donna"), Roger Baar ("Roger"), and Rosebank

Enterprises, LLC ("Rosebank") (collectively, the "third-party defendants"). (D.I. 8.) Ensotran's Counterclaim/Third-Party Complaint asserts claims against Wakley and the third-party defendants for conversion and breach of fiduciary duty as to "embezzled funds," seeks injunctive relief protecting confidential information under theories of contract, breach of fiduciary duty, and conversion, and seeks injunctive relief for the return of financial records. (Id. at 25-41.) Presently before the court is Donna's, Roger's, and Rosebank's (collectively, the "moving third-party defendants")[1] Motion to Dismiss the Third-Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2, 4-6). (D.I. 24.) On June 26, 2013, the court ordered Ensotran and the moving third-party defendants to submit supplemental briefing addressing whether the court may exercise personal jurisdiction over Donna and Roger under 6 Del. C. § 18-109, specifically regarding whether Donna and Roger acted only as delegates or representatives of Wakley and/or the Ensotran Board. (D.I. 46.) For the reasons that follow, the court grants the moving third-party defendants' motion to dismiss the Third-Party Complaint under Rule 12(b)(2) for lack of personal jurisdiction.

## II. BACKGROUND

---

[1] Yuen alleged that he was not served with the Third-Party Complaint and did not join the instant motion, but he "reserve[d] all rights to join this motion for substantially the same reasons as the moving third-party defendants." (D.I. 25 at 1.) The moving third-party defendants' argument for lack of personal jurisdiction can be summarized as: "Donna and Roger were, at all times, paid employees of Wakley and acting at the direction of *Wakley and its principal, Elmer Yuen*." (D.I. at 4 (emphasis added).) As such, the court perceives Yuen's insufficient service argument as disingenuous. Wakley filed an answer to Ensotran's counterclaims on the same day the moving third-party defendants filed the instant motion to dismiss. (D.I.s 24, 26.) Additionally, Wakley and all of the Third-Party Defendants are represented by the same counsel. (Id.) Therefore, Yuen, as Wakley's admitted principal, had *actual notice* of Ensotran's Counterclaims/Third-Party Complaint when he alleged insufficient service. Nevertheless, the court has subsequently determined that Ensotran effectuated service of process upon Yuen and instructed him to submit a response to the Third-Party Complaint upon the court's resolution of the instant motion to dismiss. (*See* Feb. 19, 2013Order re: DI. 34; D.I. 40.) Accordingly, the court shall address the pertinent issue of whether it can exercise personal jurisdiction over Yuen.

2

Wakley is a company located in Hong Kong that invests in technology companies. (D.I. 6 at 1.) Yuen is Wakley's principal. (D.I. 8 at 12; D.I. 49 at 4.) Donna and Roger are married and reside in California. (Id.) Rosebank is a California corporation that is owned and controlled by Donna and Roger. (Id. at 13.)

Ensotran is a Delaware limited liability company that acts as a holding company for intellectual property, including a low-cost manufacturing process for producing wire-grid polarizers. (Id. at 11-12.) Primal Fernando ("Fernando") is the inventor of Ensotran's wire-grid polarizer manufacturing process. (Id. at 13.) Fernando and Steven Fischer ("Fischer") founded Ensotran in the fall of 2010. (Id. at 14.)

In late November 2011, Yuen was introduced to Fernando and Fischer, and Yuen introduced them to Roger. (Id.) The third-party defendants entered into a nondisclosure agreement ("NDA") to protect Ensotran's intellectual property rights. (Id. at 15.) Ensotran then disclosed its wire-grid polarizer manufacturing process, which was being developed at the College of Nanoscale Science & Engineering at the State University of New York in Albany, New York ("CNSE"). (Id.)

On or about January 3, 2012, Yuen and Ensotran concluded negotiations whereby Wakley would purchase a one third equity interest in Ensotran for a purchase price of $1,666,666.67. (Id. at 16-17.) Wakley and Ensotran then revised an Offering of Membership Interests Term Sheet ("Term Sheet"), which set the parameters for the transaction. (Id.; Id., Ex. E.) The revised Term Sheet provided that Ensotran would be managed by a three-member board, consisting of: (1) Fernando, Chief Executive Officer of Ensotran, (2) Fischer, President of Ensotran, and (3) Wakley, or a person appointed by Wakley. (Id., Ex. E) Pursuant to the Term

3

Sheet, Wakley was to appoint a Vice President of Business Development and a Financial Controller to Ensotran, both to be paid by Wakley. (Id. at 17; Id., Ex. E.)

Wakley appointed Yeun as the third board member, Roger as Vice President of Business Development, and Donna as Financial Controller.[2] (Id. at 18.) Roger's duties were as follows:

> The Vice President of Business Development shall report to the Board of Directors. The Vice President of Business Development shall have the sole responsibility to negotiate any sale, or licensing of any of the assets of Ensotran LLC, or the sale of Ensotran LLC or its involvement in any joint ventures, *subject to the decisions and instructions of the board.*

(Id., Ex. E (emphasis added).) Donna's duties were as follows:

> The Financial Controller shall report to the Board of Directors. The Financial Controller shall have complete oversight and management of the finances of Ensotran LLC, *subject to the decisions and instructions of the board.*

(Id. (emphasis added).)

Wakley transferred $1,666,666.00 to Ensotran's bank account in two installments. (Id. at 19; Id., Ex. F.) On February 21, and April 12, 2012, Donna prepared balance sheets that indicated Wakley had a one third equity interest in Ensotran based on Wakley's investment.[3] (Id. at 19; Id., Exs. G, H.)

Beginning in February 2012, Yuen and Roger became more involved in Ensotran's day-to-day operations. (Id. at 21.) By April 2012, the parties' had diverging opinions on how to develop a wire-grid polarizer prototype. Yuen and Roger preferred a photo lithographic imaging

---

[2] Ensotran's third-party complaint states that Yuen negotiated for Donna to be Ensotran's Financial Controller "as a prophylactic measure against waste and mismanagement. Yuen wanted to have someone on the inside to monitor and ensure that the funds that he had invested in Ensotran were prudently spent." (D.I 8 at 16.)

[3] Wakley disagrees with Ensotran's stated facts. Wakley's Amended Complaint alleges that (1) it contemplated investing $1,666,666.67 in Ensotran, (2) it placed $700,000 into an account which was administered by Rosebank, (3) Roger Baar, as a principal of Rosebank, worked on marketing Ensotran's wire-grid polarizer and technological matters at Wakley's expense and on behalf of Wakley, and (4) Donna Baar, also as a principal of Rosebank, provided accounting services and administered funds deposited with Rosebank on behalf of Wakley. (*See* D.I. 6, ¶¶ 9, 15-18, 24).

4

"chemical" process, while Fernando pursued a nano-imprint "mechanical" process. (*See* D.I. 37 ("Fernando Aff."), ¶ 7.) Ensotran asserts that Roger took control of Ensotran's day-to-day operations and the technology involved in developing a prototype wire-grid polarizer on April 18, 2012. (D.I. 8 at 21; Id., Ex. N.) Over the next month, Roger continued to control Ensotran's day-to-day operations, and obtained further technical information from Fernando to develop a wire-grid polarizer prototype. (Id. at 22; Id., Ex. O.)

On May 16, 2012, Donna caused $989,914.53 to be transferred from Ensotran's bank account to Rosebank. (Id. at 22; Id., Ex. P.) At that time, Donna was the only signatory on Ensotran's bank account. Fernando and Fischer did not have prior knowledge of the transfer, and Donna did not notify them after she transferred the funds. (Id. at 22-23.) Donna then prepared a new balance sheet that listed Wakley as a creditor that had loaned $722,070.97 to Ensotran, and not an equity member that had purchased a one-third equity interest in Ensotran for $1,666,666.00. (Id. at 23; Id., Ex. Q.)

On June 1, 2012, Roger, on behalf of Yuen and Wakley, told Fischer that Wakley would bankrupt Ensotran unless Wakley received a 55% interest in Ensotran, based on the funds invested by Wakley that had been expended as of May 31, 2012. (Id. at 23.) On June 2, 2012, Donna e-mailed Fernando, Fischer, and Roger a copy of the "Ensotran LLC Balance Sheet As of June 1, 2012," and in the covering e-mail wrote: "Wakley's involvement in [E]nsotran is now listed as a loan, since no agreement was ever put in place." (Id.; Id., Ex. Q.) On June 6, 2012, Ensotran rejected Wakley's June 1 demand. (Id. at 23.) Ensotran subsequently became insolvent and this litigation ensued.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) requires that the court dismiss an action when it lacks personal jurisdiction over the defendant. In resolving a motion under Rule 12(b)(2), the court must accept the allegations in the complaint as true and construe disputed facts in favor of the plaintiff. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). However, the plaintiff bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over the movant. *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001). To meet this burden, the plaintiff must offer facts which "establish with reasonable particularity" that jurisdiction exists. *Id.* Generally, the court may consider only those facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. *El-Hewie v. Bergen Cnty.*, 348 F. App'x 790, 794 (3d Cir. 2009); *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV. DISCUSSION

The moving third-party defendants contend that the court must dismiss Ensotran's Third-Party Complaint in its entirety on procedural grounds because Ensotran fails to establish personal jurisdiction over Donna, Roger, and Rosebank. (D.I. 25 at 2.) In contrast, Ensotran argues the court has personal jurisdiction over Donna and Roger because they were managers of Ensotran. (D.I. 36 at 4-5.)

### A. Personal Jurisdiction

Under Delaware law, there are "two bedrock requirements for personal jurisdiction: (1) a statutory basis for service of process; and (2) the requisite 'minimum contacts' with the forum to satisfy constitutional due process." *Fisk Ventures, LLC v. Segal*, C.A. No. 3017-CC, 2008 WL 1961156, *6 (Del. Ch. May 7, 2008). Although plaintiffs have "a relatively light burden" to

establish a *prima facie* basis for personal jurisdiction, the Court of Chancery has stated "[c]ourt[s] should exercise caution in extending jurisdiction over nonresident defendants whose direct ties to Delaware are, at best, tenuous." *Ross Holding & Mgmt. Co. v. Advance Realty Grp.*, C.A. No. 4113-VCN, 2010 WL 1838608, at *15 (Del. Ch. Apr. 28, 2010). Here, Donna and Roger are residents of California, Yuen is a citizen of The People's Republic of China, and none of them had contact with the State of Delaware during the relevant events. Accordingly, the court approaches the personal jurisdiction question with due caution.

### 1. Personal Jurisdiction over Yuen, Donna, and Roger

Ensotran's Third-Party Complaint asserts the court can exercise personal jurisdiction over Yuen, Donna, and Roger pursuant to 6 Del. C. § 18-109, an "implied consent statute" that allows for jurisdiction over managers of Delaware limited liability companies ("LLCs") in actions "involving or relating to the business of the [LLC]" or a violation by the manager of a fiduciary duty to the LLC. 6 Del. C. § 18-109(a). The statute only applies to "managers" of an LLC, which are defined as either (1) "a person who is named . . . or designated as a manager" pursuant to the operative LLC agreements or (2) a "person who participates materially in the management of the limited liability company." *See* 6 Del C. §§ 18-109(a)(i, ii); 18-101(10). However, § 18-407 of the LLC Act makes clear that a manager's delegation of authority to another person does not cause that individual to become a manager of the LLC. *See* 6 Del. C. § 18-407[4]

---

[4] Section 18-407 states in pertinent part:
> [A] member or manager of a limited liability company has the power and authority to delegate to 1 or more other persons the member's or manager's . . . rights and powers to manage and control the business and affairs of the limited liability company . . . . [S]uch delegation . . . shall not . . . cause the person to whom any such rights and powers have been delegated to be a member or manager, as the case may be, of the limited liability company.

6 Del. C. § 18-407.

7

Here, Ensotran's Term Sheet explicitly provides that "[t]he Company will be managed by a three member Board of Directors," and states that Fernando, Fischer, and Wakley are the board members. (D.I. 8, Ex. E.) Ensotran's Third-Party Complaint alleges that Wakley appointed Yuen as its board member. (Id. at 18.) Accordingly, the court finds it has a statutory basis for exercising personal jurisdiction over Yuen, a cause he is a "manager" of Ensotran under 6 Del C. § 18-109(a)(i).[5]

However, neither Roger nor Donna was appointed as a manager of Ensotran pursuant to the operative LLC agreement. Nevertheless, Ensotran contends that because Roger's position as Vice President of Business Development and Donna's position as Financial Controller was provided for under the "Management" section of the Term Sheet, Roger and Donna were necessarily designated as managers of Ensotran. (D.I. 50 at 1, 3; D.I. 8, Ex. E.) The court disagrees. Irrespective of the section heading, the section's provisions delineate that the three mangers of Ensotran are Fernando, Fischer, and Wakley (Yuen). (D.I. 8, Ex. E.) The Term Sheet does not grant Roger and Donna managerial authority over Ensotran or Wakley. (*See* id.) Indeed, pursuant to the Term Sheet, Roger and Donna were required to "report to the Board of Directors" and their authority was "subject to the decisions and instructions of the board." (D.I. 8, Ex. E.) Therefore, the court finds that Roger and Donna are not managers of Ensotran under § 18-109(a)(i).

---

[5] As to the second prong of the test for personal jurisdiction--whether the exercise of such jurisdiction would offend notions of due process-- Delaware courts have held the requirements of due process are satisfied when a manager of a Delaware LLC breaches his fiduciary duty to the company. *See Assist Stock Management L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000). Since the crux of Ensotran's Third-Party Complaint deals with fiduciary breaches by Yuen and his co-conspirators, extending personal jurisdiction over Yuen would not offend the notions of due process. Therefore, the court finds it may exercise personal jurisdiction over Yuen.

Next the court must determine whether Roger and Donna are "managers" under § 18-109(a)(ii) because they participated materially in the management of Ensotran. For insight into this narrow issue of law, the court refers to *Vichi v. Koninklijike Philips Elecs. N.V.*, No. 2578-VCP, 2009 WL 4345724 (Del. Ch. Dec. 1, 2009). In *Vichi*, the plaintiff asserted that the defendant, Ho, participated materially in the management of a Delaware LLC ("Finance") by having a direct role in forming Finance, and executing certain documents relating to the issuance of notes on Finance's behalf. *Id.* at *7. The Court of Chancery found the assertions were not sufficient to establish personal jurisdiction under § 18-109(a) for two reasons. First, the court found that Vichi did not allege any specific facts from which it could reasonably infer that Ho personally participated materially in the management of Finance, rather than simply at the direction of, and as a representative for, his formal employer, which was the sole member and manager of Finance. *Id.* The *Vichi* Court reasoned that Ho did not benefit from the formation of Finance or the notes transaction, because he did not have an ownership share in the LLC or a personal stake in the notes transaction. *Id.* Second, the court found that the allegations did not "involve or relate to the business of Finance," a necessary predicate to jurisdiction under § 18-109, because "all of the counts that Vichi asserts against Ho relate to the transaction between Finance and Vichi or to breaches of fiduciary duties allegedly owed to Vichi personally. None of these counts relate to the rights, duties and responsibilities Ho owes *to Finance,* or in any other way to the internal business affairs of Finance or to the running of Finance's day-to-day operations." *Id.* at *8. Therefore, the *Vichi* Court found § 18-109 provided no basis for exercising personal jurisdiction over Ho. *Id.*

Here, both parties claim the *Vichi* reasoning supports their case. The moving third-party defendants assert that Roger, like defendant Ho, served as a representative for Wakley in dealing

<>with Ensotran, and Donna, at Wakley's direction, provided certain services for Ensotran. (D.I. 49 at 4.) They emphasize that neither Donna nor Roger possessed an ownership interest in Ensotran or had a personal stake in the company. As such, they argue "Donna and Roger were, at all times, paid employees of Wakley and acting at the direction of Wakley and its principal, Elmer Yuen." (Id.) Therefore, the moving third-party defendants contend that the limited role Donna and Roger performed at the request or direction of Wakley did not transform them into a member or manager of Ensotran under 6 Del. C. § 18-407. (Id. at 4-5.)

In contrast, Ensotran distinguishes *Vichi* by arguing that once Roger and Donna accepted their positions as Vice President of Business Development and Financial Controller *of Ensotran*, they were necessarily acting as managers of Ensotran and not merely as representatives of Wakley. (D.I. 50 at 4.) The court disagrees. As discussed above, the Term Sheet clearly establishes that Roger and Donna were appointed to their position by Wakley, paid employees of Wakley, and their power was "subject to the decisions and instructions of the board." (*See* D.I. 8, Ex. E.)

Ensotran further argues Roger's e-mail correspondence with the board establishes that he was "intimately involved in the business affairs of Ensotran and assumed management of the day-to-day operations of Ensotran's main project with CSNE." (D.I. 50 at 1-4; D.I. Exs. M, N, O.) As such, it argues this case is analogous to a case where the Court of Chancery held a defendant consented to personal jurisdiction under § 18-109 by taking over the day-to-day operations of a Delaware LLC. *Phillips v. Hove*, C.A. No. 3644-VCL, 2011 WL 4404034 at *22 (Del. Ch. Sept. 22, 2011). Ensotran's reliance on *Hove* is misplaced. In *Hove*, the defendant's *own testimony* established that he "took over . . . in all respects" the day-to-day operations of the LLC and "effectively ran the business[.]" *Id.* Further, Hove, without the knowledge or consent

of a LLC member, signed bankruptcy petitions on behalf of the LLC, opened up a bank account for the LLC, and then chose to dismiss the bankruptcy proceedings. *Id.* at *12-14. Through those acts, the court held the "defendant participated materially in the management of [the LLC]." *Id.* at *22.

Here, the court is not persuaded that the referenced e-mails demonstrate that Roger "took over in all respects" the day-to-day operations and effectively ran Ensotran's entire business. For example, Roger's April 18, 2012 statement that "[he] will be [the] primary contact for the CNSE project(s)" does not equate to Roger taking control of Ensotran's day-to-day operations. (D.I. 8 at 21.) A closer examination of the correspondence indicates that Roger was coordinating Ensotran's photolithography project with CNSE, while Fernando pursued a different manufacturing method elsewhere. (*See id.*, Ex. N[6].) In the same e-mail, Roger asks Fernando and Fischer about materials, shipment, and ordering, which suggests that Fernando and Fischer possess the relevant information concerning the project that Ensotran contends Roger wholly manages. (Id.) Similarly, Roger's April 19 e-mail indicates that Fernando and Fischer were the individuals who possessed the relevant information, coordinated with third parties concerning the design of certain materials, and were responsible for executing relevant contracts. (Id., Ex. O.)

---

[6] On April 18, 2012, Roger sent an e-mail to Fernando and Fischer. The e-mail stated in pertinent part:
> I have let Harry [Efstathiadis] know that I will be his primary contact on the CNSE project(s). I will need your assistance on many items so I am counting on us working together efficiently and cooperatively. I will interact on a regular basis with Harry and I need you to support me on this. Certainly, when we determine it is expeditious to have you interacting with Harry then that will happen. Right now, work through me.
> We are way behind on delivering a working polarizer. [Yuen] is not happy at all. Focus your efforts on the activities at Cornell. There is a good chance that nanoimprint will provide a working polarizer, but you need to stay focused on doing that. I will stay focused on the photolithography project with CNSE. Certainly we will overlap on some items and that is where we need to work together.

(D.I. 8, Ex. N.) Harry Efstathiadis is an Associate Professor at CNSE. He was the contact person at CNSE for Ensotran's program to develop a prototype wire-grid polarizer. (Id. at 21.)

Further, Ensotran's allegations that Roger assumed management over *one* of its projects -- "Ensotran's main project with CSNE" -- does not equate to Roger effectively running Ensotran's entire business or an assertion of authority over Ensotran analogous to the facts in *Hove*. Even accepting all well-pleaded allegations as true, these acts fail to demonstrate the necessary control or decision-making role that has been found to satisfy the statutory standard for personal jurisdiction.[7] Indeed, Roger's April 12, 2012 e-mail actually bolsters his argument that he was acting as a representative of Wakley/Yuen because Roger highlights Yuen's displeasure with the efforts to develop a working polarizer. Therefore, the court finds Roger is not a "manager" under § 18-109(a)(ii) because he did not participate materially in the management of Ensotran.

With respect to Donna, Ensotran argues that all of its claims against her relate to the "rights, duties and responsibilities she owed to Ensotran" as its financial controller. (D.I. 50 at 4.) It further contends that Donna materially participated in Ensotran's management because she: "(1) was authorized to prepare the financial statements of Ensotran, (2) prepared and

---

[7] A court found that a defendant participated materially in the management of an LLC by taking actions that fell within the exclusive authority of the Managing Member under the LLC Agreement. *Feeley. v. NHAOCG, LLC*, C.A. No. 7304-VCL, 2012 WL 966944 at *7 (Del. Ch. Mar. 20, 2012). Similarly, another court found that a defendant was a manager where he was one of the founders of the LLC, maintained a large equity stake in the LLC, held himself out to third parties as the "President and Chief Executive Officer" of the LLC, and the LLC agreement stated that the Chief Executive Officer shall serve as one of the managers. *Cornerstone Techs., LLC v. Conrad*, C.A. No. 19712-NC, 2003 WL 1787959 at *11 (Del. Ch. Mar. 31, 2003). Additionally, the court held a defendant materially participated in management by forming the LLC and serving as its sole initial member. *Christ v. Cormick*, C.A. No. 06-275-GMS, 2007 WL 2022053 at *12 (D. Del. July 10, 2007)

On the other hand, simply conferring with members of management on occasion and being involved in a single issue before the board has been found not to constitute material participation in management. *Fisk Ventures, LLC v. Segal*, C.A. No. 3017-CC, 2008 WL 1961156, at *7 (Del. Ch. May 7, 2008). Furthermore, merely having the capacity to participate in management does not constitute material participation in the LLC's management. *See Palmer v. Moffat*, 2001 WL 1221749, at *2 (Del. Super. Oct. 10, 2001) (finding that parties did not materially participate in management of the LLC, despite a broad contractual grant to them "to manage, control, administer and operate the business and affairs of the company . . . [and] to make all decisions affecting such business and affairs," because the agreement specifically provided that "[t]he operations of the Company shall be conducted by the Management Committee").

maintained Ensotran's books and records setting forth the equity interests of each member, (3) was the sole signatory on Ensotran's bank account, and (4) oversaw and managed the disbursement of approximately $720,000 of Ensotran's funds." (Id. at 3.) The court disagrees. The Court of Chancery has stated "[t]he management of the underlying assets of an LLC is analytically distinct from the management of the LLC itself for the purposes of Section 18-109(a)(ii)." *Fla. R & D Fund Investors, LLC v. Fla. BOCA/Deerfield R & D Investors, LLC*, C.A. No. 8400-VCN, 2013 WL 4734834, ay *8 (Del. Ch. Aug. 30, 2013). The defendant in *Florida R & D Fund* was granted broad authority by the LLC to run its day-to-day operations. However, the defendant's discretion and decision-making ability was contractually confined by the LLC agreement. Therefore, the court found an allegation that the defendant maintained the books and records "d[id] not constitute material participation in [LLC's] management, especially in light of the designation of the board of directors as the [LLC's] manger." *Id.*

Here, the court finds Donna's authority was similarly constrained. Although the Term Sheet granted her broad authority over Ensotran's finances, her power was "subject to the decisions and instructions of the board." (D.I. 8, Ex. E.) Therefore, the court finds Donna is not a "manager" under § 18-109(a)(ii) because she did not participate materially in the management of Ensotran.

The court finds it does not have a statutory basis for personal jurisdiction over Roger and Donna because they are not managers of Ensotran pursuant to 6 Del. C. § 18-109(a). Ensotran's averments fail to convince the court that Roger and Donna were not acting at the direction of, and as representatives for, Wakley and Yuen. Accordingly, the court finds that roles Roger and

13

Donna performed at the request or direction of Wakley and Yuen did not transform them into a manager of Ensotran under 6 Del. C. § 18-407.[8]

### 2. Personal Jurisdiction over Rosebank

Ensotran's Third-Party Complaint asserts the court can exercise personal jurisdiction over Rosebank pursuant to Delaware's Long-Arm Statute, 10 Del. C. § 3104. (D.I. 8 at 13.) However, the Third-Party Complaint does not specify which subsection of § 3104 confers jurisdiction. Ensotran's briefing clarifies its position and relies on § 3104(c)(3), which provides that jurisdiction may be extended over a defendant who "[c]auses tortious injury in the State by an act or omission in this State[.]" (D.I. 36 at 20.) Ensotran argues that a manager's act in violation of a fiduciary duty to a Delaware LLC will suffice as a "tortious injury" directed towards the State of Delaware. (Id. at 21.) That argument, however, is based on the same faulty premise that Roger and Donna are managers of Ensotran. As has been discussed, Roger and Donna are not managers of Ensotran and thus do not owe a fiduciary duty to Ensotran. Ensotran therefore fails to establish that there has been an act or failure to act within the state of Delaware causing tortious injury. Accordingly, the court may not exercise personal jurisdiction over Rosebank pursuant to Delaware's Long-Arm Statute, 10 Del. C. § 3104(c)(3).[9]

---

[8] The court denies Ensotran's request for jurisdictional discovery in light of the fact that Roger's and Donna's actions are shielded under 6 Del. C. § 18-407. Moreover, the court agrees with the moving third-party defendants that jurisdictional discovery is not warranted because Ensotran's claims for relief do not rest on acts committed within the State of Delaware. Thus, this is not a case of allowing limited discovery to determine whether a party's contacts with the forum are sufficient to subject that party to the court's jurisdiction. *See E.I. Du Pont De Nemours & Co. v. Heraeus Holding GMBH*, 2012 WL 4511258, *20 (D. Del. Sept. 28, 2012) (denying jurisdictional discovery because plaintiff failed to produce sufficient evidence to satisfy both the statutory and constitutional jurisdictional prongs).

[9] Ensotran's conspiracy theory argument for personal jurisdiction suffers a similar fate. It argues that that when Rosebank accepted funds that Donna allegedly embezzled from Ensotran, Rosebank aided and abetted Donna's breach of a fiduciary duty owed to Ensotran. (D.I. 36 at 23.) However, the conspiracy theory of personal jurisdiction "does not constitute an independent basis for subjecting an out-of-state resident to personal jurisdiction." *Hartsel v. Vanguard Grp., Inc.*, C.A. No. 5394-VCP, 2011 WL

14

### B. Ensotran's Financial Records

On June 15, 2012, Fernando requested that Donna return Ensotran's financial records, including "the QuickBooks database, tax records, file forms, receipts, reports, and any other relevant information in your possession." (D.I. 37, Ex. B.) Counts Six and Seven of Ensotran's Third-Party Complaint assert that Donna has not returned Ensotran's financial records. (D.I. 8 at 40-41.) The moving third-party defendants do not object to returning such records, so long as Ensotran specifically identifies the documents to be returned. (D.I. 25 at 4.)

## V. CONCLUSION

For the reasons stated above, the moving third-party defendants motion to dismiss the Third-Party Complaint under Rule 12(b)(2) for lack of personal jurisdiction is granted. However, the court finds it can exercise personal jurisdiction over third-party defendant Elmer Yuen, and he is required to answer the Third-Party Complaint.

Dated: March 16, 2014

CHIEF, UNITED STATES DISTRICT JUDGE

---

2421003, at *10 (Del. Ch. June 15, 2011), *aff'd mem.*, 38 A.3d 1254 (Del. Supr. 2012). Therefore, Ensotran's argument must fail because it did not establish personal jurisdiction over Donna.

Likewise, the court rejects Ensotran's argument that the court can exercise personal jurisdiction over Rosebank pursuant to Delaware's Implied Consent Statute, 6 Del. C. § 18-109. (D.I. 36 at 20, 25.) Ensotran failed to establish that Roger and Donna were managers of Ensotran and subject to personal jurisdiction under Section § 18-109. Therefore, Ensotran's argument for personal jurisdiction over Rosebank under Section § 18-109 necessarily fails. As a result, Ensotran's veil piercing argument also falls short. Ensotran asserts that jurisdiction extends to Rosebank through principles of agency theory (D.I. 36 at 25), but neither Roger and Donna (the purported agents) nor Rosebank (the principle) have availed themselves within the State of Delaware or subjected themselves to jurisdiction in the state. *See Ross Holding Mgmt. Co. v. Advance Realty Grp., LLC*, C.A. No. 4113-VCN, 2010 WL 1838608, at *13 (Del. Ch. Apr. 28, 2010) (stating that "even under the agency theory based on a non-resident agent, the Plaintiffs would need, at least, to assert that the non-resident agent of [the defendant] could have been sued in Delaware under the long-arm statute.").

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAKLEY LIMITED,                              )  |   |   |
|                   Plaintiff-Counterclaim    )  |   |   |
|                   Defendant,                )  |   |   |
|                                             )  | Civil Action No. 12-728-GMS |   |
| v.                                          )  |   |   |
|                                             )  |   |   |
| ENSOTRAN, LLC,                              )  |   |   |
|                                             )  |   |   |
|                   Defendant-Counterclaim    )  |   |   |
|                   Plaintiff,                )  |   |   |
|                                             )  |   |   |
| ENSOTRAN, LLC,                              )  |   |   |
|                   Third-Party Plaintiff,    )  |   |   |
|                                             )  |   |   |
| v.                                          )  |   |   |
|                                             )  |   |   |
| DONNA BAAR, ROGER BAAR,                     )  |   |   |
| ROSEBANK ENTERPRISES, INC., and             )  |   |   |
| YUAN GONG YI a/k/a ELMER YUEN,              )  |   |   |
|                   Third-Party Defendants    )  |   |   |

## **ORDER**

IT IS HEREBY ORDERED THAT:

1. Donna Baar's, Roger Baar's, and Rosebank Enterprises, LLC's Motion to Dismiss the Third-Party Complaint for lack of personal jurisdiction (D.I. 24) is GRANTED.

2. In regard to the Third-Party Complaint Counts Six and Seven, the parties shall meet and confer with one another, Ensotran will identify the specific documents to be returned, and the third-party defendants shall return the specifically identified documents on or before _April 1_, 2014.

3. Within __14__ days of this order, the parties shall submit to the court a revised schedule reflecting the necessary changes with respect to third-party defendant Yuen.

Dated: March __16__, 2014

_____
CHIEF, UNITED STATES DISTRICT JUDGE